**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TANIA PICHARDO, JENNIFER JONES, individually and on behalf of all others similarly situated, <br><br>            Plaintiff, <br><br>     v. <br><br> ONLY WHAT YOU NEED, INC., <br><br>            Defendant. | Case No:  1:20-cv-00493-VEC |

## DEFENDANT ONLY WHAT YOU NEED, INC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

J. Noah Hagey
Jonathan Kortmansky
BRAUNHAGEY & BORDEN LLP
7 Times Square, 27th Floor
New York, NY 10036
Tel. & Fax: (646) 829-9403
hagey@braunhagey.com
kortmansky@braunhagey.com
*Attorneys for Only What You Need, Inc.*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

BACKGROUND ..................................................................................................... 3

    A.    The Parties.................................................................................. 3

          1.    OWYN.................................................................... 3

          2.    Plaintiffs................................................................ 4

          3.    The Recruitment of Plaintiffs to Bring this Case ..................... 4

    B.    Plaintiffs' Amendment of the Complaint............................................ 6

    C.    The Allegations in the FAC.............................................................. 7

ARGUMENT .......................................................................................................... 8

I.    PLAINTIFFS HAVE NOT PLEADED ANY INJURY OR MATERIAL
MISREPRESENTATION.................................................................................. 9

    A.    OWYN's Use of the Adjective Vanilla Is Entirely Truthful.............. 10

    B.    The Presence, *Vel Non*, of *V. Planifolia*, in a Vanilla Drink Is Not Material ....... 14

    C.    Plaintiffs Did Not Suffer Any Injury as a Result of OWYN's Use of the Term
"Vanilla" to Describe Its Vanilla Drink .............................................. 16

    D.    Plaintiff's Citation to Technical FDA Regulations Is Irrelevant........................ 16

    E.    The GC-MS Test Results Are Irrelevant........................................... 18

II.    PLAINTIFF'S COMMON LAW CLAIMS SEPARATELY FAIL FOR
ADDITIONAL REASONS................................................................................ 18

    A.    Plaintiff's Warranty Claims Fail on Many Grounds............................. 19

1.      Plaintiff Has Not Alleged Timely Notice of Warranty Claims or Privity with OWYN .............................................................................................19

2.      Plaintiff Has Not Alleged Any Statement on OWYN's Label that Creates an Express Warranty.............................................................................20

3.      Plaintiff Has Not Alleged that OWYN's Product is not "Merchantable" .21

4.      Plaintiff Has Not Alleged Any "Written Affirmations" or "Promises" ....21

B.      Plaintiff's Unjust Enrichment Claim Should be Dismissed as Duplicative ..........22

CONCLUSION...........................................................................................................22

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Ackerman v. Coca-Cola Co.*,
  2010 WL 2925955 (E.D.N.Y. July 21, 2010)........................................................21

*Ambac Assurance Co. v. Countrywide Home Loans, Inc.*,
  106 N.E.3d 1176 (N.Y. 2018).............................................................................18

*Arthur Jaffe Assocs. v. Bilsco Auto Serv. Inc.*,
  58 N.Y. 2d 993 (1983)........................................................................................20

*Baker v. Robert I. Lappin Charitable Found.*,
  415 F. Supp. 2d 473 (S.D.N.Y. 2006).................................................................20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ......................................9

*Boshnack v. Widow Jane Distilleries LLC*,
  2020 WL 3000358................................................................ 9, 11, 15, 16, 19

*Castillo v. Tyson*,
  268 A.D. 2d 336 (N.Y. App. Div. 1st Dept. 2000) ..............................................20

*Chen v. Dunkin' Brands, Inc.*,
  954 F.3d 492 (2d Cir. 2020) .............................................................................9, 11

*Chiste v. Hotels.com L.P.*,
  756 F. Supp. 2d 382 (S.D.N.Y. 2010).................................................................11

*Corsello v. Verizon New York, Inc.*,
  18 N.Y.3d 777 (2012).........................................................................................22

*Daniel v. Mondelez Int'l, Inc.*,
  287 F. Supp. 3d 177 (E.D.N.Y. 2018).................................................................10

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013) .............................................................................9, 12

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
  No. 12-MD-2413 (RRM), 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ............22

*In re Scotts EZ Seed Litig.*,
  No. 12 CV 4727(VB), 2013 WL 2303727 (S.D.N.Y. May 22, 2013).....................20

*Johnson v. Priceline.com, Inc.*,
  711 F.3d 271 (2d Cir. 2013) ................................................................................9

*Kaplan v. Reed Smith LLP*,
  919 F.3d 154 (2d Cir. 2019) ..............................................................................19

*Keiler v. Harlequin Enters.*,
  751 F.3d 64 (2d Cir. 2014) ..................................................................................9

*Kennedy v. Mondelēz Global LLC*,
  19-cv-302-ENV-SJB, 2020 WL 4006197 (E.D.N.Y. July 10, 2020) ................2, 13

*Koenig v. Boulder Brands, Inc.*,
  995 F. Supp. 2d 274 (S.D.N.Y. 2014).................................................................22

*Loreley Fin. (Jersey) No.3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015) ..............................................................................18

iii

*Paulino v. Conopco, Inc.*,
   No. 14-CV-5145 JG RML, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ............................22
*Pelayo v. Nestle USA, Inc.*,
   989 F. Supp. 2d 973 (C.D. Cal. 2013) ............................................................................. 16, 17
*Schiro v. Cemex, S.A.B. de C.V.*,
   438 F. Supp. 3d 194 (S.D.N.Y. 2020) ...................................................................................8
*Scientific Components Corp. v. Sirenza Microdevices, Inc.*,
   399 F. App'x 637 (2d Cir. 2010) .........................................................................................21
*Singleton v. Fifth Generation, Inc.*,
   2016 WL 406295 ...........................................................................................................19, 20
*Sitt v. Nature's Bounty, Inc.*,
   No. 15-CV-4199 (MKB), 2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016) ............................22
*Steele v. Wegman Food Markets, Inc.*
   2020 WL 3975461 (S.D.N.Y. July 14, 2020) ...................................................... 2, 9, 12, 13
*Teixera v. St. Judge S.C., Inc.*,
   193 F. Supp. 3d 218 (W.D.N.Y. 2016) ...............................................................................20
*THOIP v. Walt Disney Co.*,
   690 F. Supp. 2d 218 (S.D.N.Y. 2010) .................................................................................16
*Tomasino v. Estee Lauder Cos. Inc.*,
   44 F. Supp. 3d 251 (E.D.N.Y. 2014) ..................................................................................20
*Utts v. Bristol-Myers Squibb Co.*,
   251 F. Supp. 3d 644 (S.D.N.Y. 2017) .................................................................................13

Statutes

15 U.S.C. § 2301(6)(A) .........................................................................................................21
N.Y. U.C.C. Law § 2-313(a) .................................................................................................20
N.Y. U.C.C. Law § 2–607(3)(a) ............................................................................................19
N.Y. U.C.C. § 2-314(2)(c) .....................................................................................................21

Regulations

21 C.F.R. § 101.22 ................................................................................................................16
21 C.F.R. § 101.22 (i) ...........................................................................................................17
21 C.F.R. § 101.22(g) ...........................................................................................................17
21 C.F.R. § 101.22(i)(1)(iii) ..................................................................................................17
21 C.F.R. §§ 169.175 and 169.177 .......................................................................................17

Defendant Only What You Need, Inc. ("OWYN") respectfully submits this
Memorandum in support of its Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC").

## INTRODUCTION

Defendant OWYN is a small business that makes protein drinks.  All its products are
delightfully flavored and free of allergens and synthetic ingredients.

Plaintiffs are serial litigants with dozens of lawsuits to their name, who were recruited by
their lawyer over the internet, rather than harmed.  They claim to have suffered an "injury" from
OWYN's Smooth Vanilla beverage.  But they do not claim that the product tasted differently
than they expected it to taste, *i.e.*, like vanilla.  Nor do they assert they did not enjoy the drink, or
that it contained anything other than the listed ingredients.  Rather, they maintain that they were
somehow harmed because the vanilla flavor did not come from "[t]he tropical orchid of the
genus Vanilla (*V. planifolia*)."  (FAC ¶ 5.)

This claim is implausible.  Everyone knows that vanilla does not exclusively refer to a
plant.  It also describes a flavor.  Many iconic products that do not contain any *V. planifolia* are
named for their vanilla flavor, like a vanilla ice cream cone from Dairy Queen, Jell-O Vanilla
Pudding®, Betty Crocker Vanilla Frosting® and Vanilla Coke®.  Much like orange soda does
not contain oranges and cream soda does not contain cream, the adjective vanilla refers to a well-
known flavor, which 99% of the time does not involve *V. planifolia*.[1]

Plaintiffs are not botanists or sommeliers; they were recruited by their lawyer through
online advertising on social media.  Through the same advertising campaign, Plaintiffs' lawyer
solicited 65 other plaintiffs for 65 other cut-and-paste lawsuits in the Southern and Eastern

---

[1] *See*, *e.g.*, FAC ¶ 17; *The Bittersweet Story of Vanilla*, Smithsonian Magazine (Apr. 7, 2017)
("Today, less than 1 percent of vanilla flavoring comes from the vanilla flower"), available at
https://www.smithsonianmag.com/science-nature/bittersweet-story-vanilla-180962757/.

Districts of New York, all seeking to extract money from companies using the term "vanilla" as it is used 99% of the time.

Plaintiffs' various legal theories all fail because they cannot allege any of the basic elements of standing or their claims, *i.e.*, injury, causation, redressability, a false statement, and materiality. The Complaint also cites various technical FDA regulations that Plaintiffs claim hold that the term "vanilla" cannot be used on a product unless it is flavored exclusively with *V. planifolia*. (FAC ¶¶ 18-27, 43-47.) But the regulations cited in the Complaint either pertain to vanilla extracts or flavorings – products that purport to be distillates of the vanilla bean – or expressly permit the use of common terms like "vanilla" to describe a product's flavor, consistent with decades of practice with which every reasonable consumer is familiar.

For this reason, Courts have begun to reject Plaintiffs' lawyers' theories. In *Steele v. Wegman Food Markets, Inc.*, The Honorable Louis L. Stanton dismissed with prejudice plaintiffs' claims that they were misled into thinking that vanilla ice cream was flavored exclusively with vanilla beans. — F. Supp. 3d —, 19 Civ. 9227 (LLS), 2020 WL 3975461 (S.D.N.Y. July 14, 2020). Judge Stanton reasoned that consumers were not looking "for a bowl of vanilla," and consumers could read the ingredient list, "which mentions neither vanilla beans nor extracts" but rather "Natural Flavor". *Id.* *2. There was thus no deception: "What is misrepresented? The ice cream is vanilla flavored." *Id.*; *see also Kennedy v. Mondelēz Global LLC*, 19-cv-302-ENV-SJB, 2020 WL 4006197 at *9 (E.D.N.Y. July 10, 2020) (rejecting Plaintiffs' lawyer's theory that a graham cracker was misleadingly labeled because it was not composed entirely of graham flour, because consumers know that a "graham cracker" is a flavored cracker, not a cracker made of graham).

In addition to failing to plausibly allege that Plaintiffs reasonably and detrimentally relied on any statement by OWYN or suffered any injury, the Complaint fails for numerous other separate and independent reasons.  The state-law warranty claims fail to allege pre-suit notice, identify any actual warranty, or establish that the products were not merchantable or that plaintiffs are in privity with OWYN.  And Plaintiffs' unjust enrichment claim is duplicative.

Plaintiffs' amendments to its original pleading did not cure the deficiencies identified in OWYN's original motion to dismiss (Dkt. No. 17) beyond adding allegations claiming that Plaintiffs had purchased the products rather than Annmarie St. John, one of Plaintiffs' lawyers' other captive plaintiffs, and adding a new plaintiff who was also recruited through a misleading lawyer solicitation rather than injured.

For the reasons above and below, and in accordance with the Court's Individual Practice Rule 4.E.1, OWYN respectfully submits that the FAC must be dismissed with prejudice.

## **BACKGROUND**

This motion is based on the allegations in the Complaint, as well as the judicially noticeable public materials set forth in OWYN's Request for Judicial Notice ("RJN").

**A.      The Parties**

**1.      OWYN**

OWYN is a New Jersey-based company founded by husband and wife Kathryn Moos and Jeff Mroz.  Both former athletes who also suffer from serious food allergies, they built OWYN to make delicious, plant-based protein products that would be free of the most common allergens. Unlike many of their competitors, OWYN does not use any artificial colors, flavors, or preservatives in its products.

2.      **Plaintiffs**

Plaintiff Pichardo is a serial litigant.  Public records show Plaintiff Pichardo as a party in at least the following actions:  *Pichardo v. Fordham Hill Garage Owners Corp., et al.*, Case No. 0022917/2016 (Bronx Borough Supreme Ct.); *Pichardo v. Bronx Parking Systems Car Park Systems of New York, Inc., et al.*, Case No. 0024319/2014 (Bronx Borough Supreme Ct.); *Pichardo v. Zewdu*, Case No. 0105070/2009 (N.Y. County Supreme Ct.); *Pichardo v. Apple Bank for Savings*, Case No. 0050145/2002 (Bronx Borough Supreme Ct.); *Pichardo v. CitiBank*, Case No. 1677501/2001 (N.Y. County Civil Ct.); *Pichardo v. Teofilo*, Case No. 0303275/2013 (N.Y. County Supreme Ct.); *Dep't of Taxation and Finance v. Pichardo*, Filing No. 1951262 (N.Y. County Clerk Tax Warrant); *Beth Israel Medical v. Pichardo*, Filing No. 2617101 (N.Y. County Clerk Medical Lien); *Citibank v. Pichardo*, Case No. 1677501/2001 (N.Y. County Civil Ct.); *CitiBank v. Pichardo*, Filing No. CV13203009BX (N.Y. Civ. Ct. 2010).  (RJN, Exs. 1-10.)

Plaintiff Jones was not identified in the original complaint.  Previously, the complaint identified Annmarie St. John as the purchaser of the product; when OWYN pointed out that Ms. St. John was a plaintiff in another one of Plaintiffs' lawyer's cases, she was replaced with Plaintiff Jones.  Plaintiff Jones alleges she purchased Smooth Vanilla until "the middle of 2020." (FAC ¶ 71.)

3.      **The Recruitment of Plaintiffs to Bring this Case**

Rather than being injured, Plaintiffs appear to have been recruited through a misleading advertising campaign on classactionreporter.com, as well as various social media sites.  (RJN, Ex. 11.)  For example, Plaintiffs' lawyer posted an ad on Facebook inviting parties to "Join the Investigation and Possible Class-Action Lawsuit" against OWYN's Smooth Vanilla product. This statement was misleading because there was no true investigation occurring.  The ad was

posted on July 20, 2020, after Plaintiffs had filed their claims.  Plaintiffs' lawyer was simply

using the guise of an "investigation" to recruit even more plaintiffs.

Plaintiffs' lawyer used the same websites and similar advertisements to recruit 65

plaintiffs to file 65 cut-and-paste "vanilla" cases – two of which are also pending before this

Court:  *Liou et al v. Nestle Dreyer's Ice Cream Co.*, Case No. 1:19-CV-05762-DLC (S.D.N.Y.);

*Spitzer v. Celestial Seasonings, Inc.*, Case No. 1:20-CV-02000-DLC (S.D.N.Y.).  (RJN, Exs. 12-

13.)[2]  Indeed, Plaintiffs' lawyer's recent social media postings reveal that he is soliciting clients

to sue virtually every consumer product on sale in the country.  (RJN Ex. 14.)

---

[2] *Kane et al v. Turkey Hill, L.P.*, Case No. 2:19-cv-04794-JS-ARL (E.D.N.Y.); *Pinkston v. Whole Foods Market Group, Inc.*, Case No. 1:19-CV-09362-LJL (S.D.N.Y.); *Burke v. Whole Foods Market Group, Inc.*, Case No. 1:19-CV-05913-CBA-SMG (E.D.N.Y.); *Andriulli et al v. Danone N. Am., LLC*, Case No. 7:19-CV-05165-VB (S.D.N.Y.); *Cartelli v. Danone US, Inc.*, Case No. 7:19-CV-11354-VB (S.D.N.Y.); *Cosgrove v. Blue Diamond Growers*, Case No. 1:19-CV-08993-VM (S.D.N.Y.); *Varelli v. Blue Diamond Growers*, Case No. 1:19-CV-05259-BMC (E.D.N.Y.); *Lopez v. SPC Mgmt. Co., Inc.*, Case No. 2:19-CV-01875-JS-AKT (E.D.N.Y.); *Budhani v. Monster Beverage Co.*, Case No. 1:20-CV-01409-LJL (S.D.N.Y.); *Civello v. Conopco, Inc.*, Case No. 1:20-CV-01173-VM (S.D.N.Y.); *Hamilton v. Orgain, Inc.*, Case No. 1:20-CV-01084-VEC (S.D.N.Y.); *Swantek v. Save-A-Lot Holdings, Inc.*, Case No. 7:20-CV-00894-CS (S.D.N.Y.); *Twohig v. Shop-Rite Supermarkets, Inc.*, Case No. 7:20-CV-00763-CS (S.D.N.Y.); *Powell v. Dollar Tree Stores, Inc.*, Case No. 1:20-CV-00734-JPO (S.D.N.Y.); *Papoulis v. Pac. Foods of Oregon, LLC*, Case No. 1:20-CV-00432-ERK-SMG (E.D.N.Y.); *Figueroa v. Trader Joe's Co.*, Case No. 1:20-CV-00322-LDH-SMG (E.D.N.Y.); *Sanders v. Trader Joe's Co.*, Case No. 1:20-CV-00496-VEC (S.D.N.Y.); *Collishaw v. Cooperative Regions of Organic Producer Pools*, Case No. 7:20-CV-00277-VB (S.D.N.Y.); *Darby v. Prairie Farms Dairy, Inc.*, Case No. 1:20-CV-00151-NRB (S.D.N.Y.); *Lamouth v. Horizon Organic Dairy, LLC*, Case No. 1:19-CV-11928-AT (S.D.N.Y.); *Rosado v. Riverside Partners L.L.C. et al*, Case No. 1:19-CV-07228-BMC (E.D.N.Y.); *Santiago v. Lidl US, LLC*, Case No. 1:19-CV-07206-LDH-SMG (E.D.N.Y.); *Lytkine v. 7-Eleven, Inc.*, Case No. 1:19-CV-11352-JGK (S.D.N.Y.); *Louis v. The Mochi Ice Cream Co.*, Case No. 1:19-CV-11242-VM (S.D.N.Y.); *Fore-Heron v. The Price Chopper, Inc.*, Case No. 7:19-CV-11224-NSR (S.D.N.Y.); *Cummings v. Topco Assoc., LLC*, Case No. 1:19-CV-11104-RA (S.D.N.Y.); *Newton v. Whitewave Services, Inc.*, Case No. 1:19-CV-06743-LDH-JO (E.D.N.Y.); *Lyons v. Wells Enterprises, Inc.*, Case No. 7:19-CV-10916-VB (S.D.N.Y.); *Benites v. 7-Eleven, Inc.*, Case No. 1:19-CV-06551-MKB-PK (E.D.N.Y.); *Cosgrove v. Oregon Chai, Inc.*, Case No. 1:19-CV-10686-KPF (S.D.N.Y.); *Vinales v. Kemps LLC*, Case No. 1:19-CV-10463-RA (S.D.N.Y.); *Dashnau v. Unilever Manufacturing (US), Inc.*, Case No. 7:19-CV-10102-KMK (S.D.N.Y.); *Barreto v. Westbrae Natural, Inc.*, Case No. 1:19-CV-09677-PKC (S.D.N.Y.); *Smith v. Moran Foods, LLC*, Case No. 1:19-CV-09453-

**B.      Plaintiffs' Amendment of the Complaint**

Plaintiffs initiated this action on January 18, 2020.  On June 15, 2020, OWYN requested

to meet and confer with Plaintiffs regarding the deficiencies in their complaint.  OWYN

explained that "to save judicial and party resources, we ask that if you intend to amend or

augment your claims that you do so now.  If we have to file 2 motions instead of one, when you

were planning to amend all along, that will obviously be an issue that we will raise with [the

---

LTS-JLC (S.D.N.Y.); *Gensberg v. Aldi Inc*., Case No. 1:19-CV-05745-EK-ST (E.D.N.Y.); *Hyde v. WWF Operating Co., LLC*, Case No. 1:19-CV-05566-RPK-CLP (E.D.N.Y.); *Parham v. Aldi Inc*., Case No. 1:19-CV-08975-PGG, (S.D.N.Y.); *Trust et al v. Silk Operating Co., LLC*, Case No. 7:19-CV-08442-KMK (S.D.N.Y.); *Clarke et al v. Tillamook County Creamery Assoc.*, Case No. 7:19-CV-08207-NSR (S.D.N.Y.); *Haut et al v. Glanbia Performance Nutrition (Manufacturing), Inc*., Case No. 1:19-CV-04566-ILG-CLP (E.D.N.Y.); *Derchin et al v. Unilever United States, Inc.*, Case No. 1:19-CV-03543-RPK-RER, (E.D.N.Y.); *Garadi et al v. Mars Wrigley Confectionery US, LLC*, Case No. 1:19-CV-03209-RJD-ST (E.D.N.Y.); *Sharpe v. A & W Concentrate Co.*, Case No. 1:19-CV-00768-BMC (E.D.N.Y.); *Webber v. McDonald's Corp*., Case No. 7:20-cv-02058-KMK (S.D.N.Y.); *Guzman v. Aldi Inc*., Case No. 1:20-CV-02550-RJD-VMS (E.D.N.Y.); *Cleary v. Wakefern Food Corp*., Case No. 1:20-CV-02537-KAM-RML (E.D.N.Y.); *Sajnani et al v. The Hain Celestial Group, Inc*., Case No. 1:20-CV-04281-JSR (S.D.N.Y.); *Falborn v. Unilever United States, Inc.*, Case No. 7:20-CV-04138-KMK (S.D.N.Y.); Mahan v. Kerry, Inc., Case No. 3:20-CV-03346-TSH (N.D.N.Y.); *Sharma v. Wegmans Food Markets, Inc*., Case No. 1:20-CV-02210-ENV-JO (E.D.N.Y.); Hee v. H Mart, Inc., Case No. 5:20-CV-02960-NC (N.D. Cal.); *Vizcarra v. Unilever United States, Inc*., No. 4:20-CV-02777-YGR, (N.D. Cal.); *Dailey v. A&W Concentrate Co.*, No. 4:20-CV-02732-JST (N.D. Cal.); *Biegel v. Blue Diamond Growers*, Case No. 7:20-CV-03032-CS (S.D.N.Y.); *Ali et al v. All Market, Inc*., Case No. 7:20-CV-02823-PMH (S.D.N.Y.); *Miller v. Wegmans Food Markets, Inc*., Case No. 1:20-CV-01703-RJD-RER (E.D.N.Y.); *Buonocore v. Aldi Inc*., Case No. 1:20-CV-01699-BMC (E.D.N.Y.); *Cohen et al v. Wegmans Food Markets, Inc*., Case No. 1:20-CV-01409-RRM-CLP (E.D.N.Y.); *Lamonakis v. Blue Diamond Growers*, Case No. 1:20-CV-01347-MKB-SMG (E.D.N.Y.); *Ferreri et al v. Chobani, LLC*, Case No. 1:20-CV-02161-JGK (S.D.N.Y.); *Angeles v. Tillamook County Creamery Assoc.*, Case No. 1:20-CV-01764-JPO (S.D.N.Y.); *Richardson v. Mars, Inc.*, Case No. 7:19-CV-10860-PMH (S.D.N.Y.); *Steele et al v. Wegmans Food Markets, Inc*., Case No. 1:19-CV-09227-LLS, (S.D.N.Y.)

Court].  So we'd like to meet and confer about that now to avoid that scenario."  In response, Plaintiffs stated: "The complaint is sufficient as pleaded."  (Dkt. No. 20.)

OWYN moved to dismiss the original complaint on June 22, 2020.  (Dkt. No. 17.) Rather than oppose the motion to dismiss, and notwithstanding their assertion that the original complaint was sufficient, on July 14, 2020, Plaintiffs filed the FAC.  (Dkt. No. 22.)

### C.    The Allegations in the FAC

The vast bulk of the allegations in the FAC appear to be identical to those in the original complaint.[3]  It seems that the complaint was amended to correct numerous copy-and-paste errors in the original, which identified Annmarie St. John as the plaintiff – who is in fact a plaintiff in a suit Plaintiffs' lawyer has brought against Wal-Mart.  The FAC removes any reference to Ms. St. John (as well as stray references to Wal-Mart), and adds a new Plaintiff, Jennifer Jones.

Like the original complaint, virtually none of the allegations in the Complaint pertain to the product label, or even products made by OWYN at all.  The FAC is largely devoted to discussions about the vanilla plant and flavor and a supposed conspiracy by the "flavor industry."  (FAC ¶¶ 5-29.)

Also missing from Plaintiff's exegesis on vanilla is any discussion of how *V. planifolia* has led to deforestation, exploitation and mayhem in the countries where it is grown.  *See*, *e.g.*, *Madagascar's Vanilla Wars: Prized Spice Drives Death and Deforestation*, The Guardian (Mar. 31, 2018) (discussing extrajudicial killings over thefts of vanilla plants and how "environmental defenders say they highlight how the surging price of vanilla on global markets is connected to village crime and forest destruction" and noting "Vanilla is adding to deforestation pressures. At

---

[3] Plaintiffs did not file a redlined version of the amended pleading, as required by the Court's Individual Practice Rule 4.E.1.

Masoala national park – which is one of Madagascar's best protected forests and home to many endangered species of lemur – visitors can hear the sound of chainsaws and see recently felled trees. In one area just inside the park boundary sign, a small clearing has been opened for the cultivation of vanilla."), https://www.theguardian.com/environment/2018/mar/31/madagascars-vanilla-wars-prized-spice-drives-death-and-deforestation.

Only two allegations in the complaint depict the product label.  (FAC ¶¶ 3, 23).  The FAC also attaches a purported consumer survey and the purported results of a Gas Chromatography-Mass Spectrometry ("GC-MS") analysis of the product.  (Dkt. Nos. 22-1, 22-2.)  The FAC alleges that the GC-MS analysis shows that OWYN's products in fact have a higher concentration of vanillin – the active ingredient in vanilla beans – than is present in vanilla extract.  (FAC ¶ 41.)

Plaintiffs allege that they purchased the product at some point between 2018 and the present.  (FAC ¶¶ 70-71.)  Plaintiffs allege that they read only the product's front label, and believed the product contained "more vanilla than it actually did," although they do not allege how much vanilla they thought the product contained.  Plaintiffs do not identify any false statement on which they relied in making their purchase decision.  The Complaint references the phrases "Smooth Vanilla" and "Natural Flavors."  (FAC ¶¶ 3, 72.)  But the Complaint does not allege the product does not taste like vanilla or lacks natural flavors or that it was anything other than exactly what it purports to be:  a vanilla protein drink.

## ARGUMENT

"To survive a motion to dismiss under Rule 12(b)(6), 'a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief.'"  *Schiro v. Cemex, S.A.B. de C.V.*, 438 F. Supp. 3d 194, 197 (S.D.N.Y. 2020) (Caproni, J.) (quoting *Johnson v. Priceline.com, Inc.*, 711

F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S.Ct.

1955, 167 L.Ed.2d 929 (2007)))). The complaint must contain "'allegations sufficient to raise an

entitlement to relief above the speculative level.'" *Schiro*, 438 F. Supp. at 197 (quoting *Keiler v.*

*Harlequin Enters.*, 751 F.3d 64, 70 (2d Cir. 2014).

## I.     PLAINTIFFS HAVE NOT PLEADED ANY INJURY OR MATERIAL MISREPRESENTATION

All of Plaintiffs' claims fail because they all require allegations of a misrepresentation,

materiality and causation, none of which exists here. Plaintiffs have asserted claims under

various theories.[4] But at their core, each of them requires Plaintiffs to show that OWYN's

advertising was materially false and that they suffered an injury as a result of it. *Steele*, 2020

WL 3975461, at *2 ("The point here is not conformity with this or that standard (which is left to

the authorities to regulate) but whether the marketing presentation was deceptive."); *Boshnack v.*

*Widow Jane Distilleries LLC*, 2020 WL 3000358, at *2-3 (to state claim under GBL § 349

plaintiff must allege advertising was "misleading in a material way" and that plaintiff

"consequently suffered injury"); *Chen v. Dunkin' Brands, Inc*. 954 F.3d 492, 500 (2d Cir. 2020)

(same, and noting that § 350 claims are "analyzed under the same 'reasonable consumer'

standard as Section 349"). Where a plaintiff has not adequately pleaded a material

misrepresentation, the complaint should be dismissed. *See Fink v. Time Warner Cable*, 714 F.3d

739, 741 (2d Cir. 2013) ("[A] court may determine as a matter of law that an allegedly deceptive

advertisement would not have misled a reasonable consumer.").

---

[4] Plaintiffs' First Cause of Action is under GBL §§ 349, 350. Their Second Cause of Action is
for negligent misrepresentation. Their third is for breach of warranty. Their fourth is for fraud.
And their fifth is for "unjust enrichment."

As OWYN pointed out in its original motion to dismiss at 8, Plaintiffs do not allege exactly how OWYN's labels are supposedly false, what they thought "smooth vanilla" meant at the time of their supposed purchases or how the product they received purportedly differed from their expectation (or anyone else's).  But even if they had purchased the product because they thought the term "smooth vanilla" meant that its vanilla flavor came exclusively from *V. planifolia*, Plaintiffs could not plausibly show that they were materially misled by OWYN Smooth Vanilla's use of the term for at least three reasons:  (1) the term is not misleading, (2) it is not material, and (3) it did not cause any harm to Plaintiffs.

### A.     OWYN's Use of the Adjective Vanilla Is Entirely Truthful

The first reason why Plaintiff's claims fail is that Smooth Vanilla uses the term "smooth vanilla" to describe the flavor of the drink.  That is not misleading.

Plaintiffs allege that any use of the word "vanilla" is "understood by consumers to identify a product where (1) vanilla is the characterizing flavor, (2) vanilla is contained in a sufficient amount to flavor the product, (3) the flavor is provided by an exclusively vanilla ingredient, (4) no other flavors simulate, resemble, reinforce, or enhance flavoring from vanilla or permit less real vanilla to be used and (5) vanilla is the exclusive source of flavor."  (FAC ¶ 15.)  Leaving aside that a reasonable consumer could not even understand this crescendo of impenetrable and conflicting strictures, this is not plausible.

As noted above and in Paragraph 17 of the FAC, 99% of the time, vanilla refers to a flavor rather than an ingredient.  Under Plaintiffs' version of the reasonable consumer test, they would get to sue 99% of the market (and apparently have tried to do so) based on their unusual and implausible understanding of the term.  That is not how the reasonable consumer test works. *E.g.*, *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 192 (E.D.N.Y. 2018) (rejecting claim that "a reasonable consumer would *only* consider the size of the product in making purchasing

decisions based on perceived amount or quantity of food"); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 404 (S.D.N.Y. 2010) (reasonable consumers understood businesses make profits from their transactions, and to rule otherwise would "attribute[] to consumers a level of stupidity that the Court cannot countenance and that is not actionable under G.B.L. § 349").  Indeed, Plaintiffs are anything but reasonable consumers, given that they were solicited to bring this case and are no strangers to the legal system.

Under *Twombly* and *Iqbal*, the Court need not abandon common sense in evaluating a plaintiff's claims.  *Widow Jane*, 2020 WL 3000358, at *3 (citing *Chen*, 954 F.3d at 500) (brackets in original) ("'[I]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer.'").  Here, anyone knows that the same word can describe both an ingredient and flavor – and more.  For example, the word "orange" denotes a fruit, a flavor and a color.  Orange soda might taste like oranges, but does not necessarily contain the fruit.  Hansen's Natural Orange Soda does not have any oranges in it and is not even the color orange.  But people understand that orange soda refers to a flavor.

The same is true for vanilla.  The term "vanilla" describes a flavor.  That flavor can be achieved in a variety of ways, as noted in the FAC.  For that reason, many ubiquitous vanilla foods and beverages do not contain *V. planifolia*, or even any extract of the vanilla bean whatsoever, *e.g.*, Dairy Queen Vanilla Ice Cream, Jell-O Vanilla Pudding®, Betty Crocker Vanilla Frosting®, or Vanilla Coke®.[5]  Other vanilla products, such as Baskin-Robbins Vanilla

---

[5] For this reason, some ice cream brands using actual *V. planifolia* have attempted to distinguish themselves as "vanilla bean ice cream."  *See*, *e.g.*, https://www.tillamook.com/ice-cream/premium/vanilla-bean.html.

Ice Cream, are flavored with vanilla extract, not *V. planifolia*.[6]  And still other products use a

combination of extract and other flavors.  People understand that all these popular products taste

like vanilla and that the term "vanilla" is not a warranty that the flavor is exclusively derived

from *V. planifolia* or that any of the other made-up conditions listed by Plaintiffs exist.  *Fink v.*

*Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("[I]n determining whether a reasonable

consumer would have been misled by a particular advertisement, context is crucial.")

 For precisely these reasons, Judge Stanton dismissed identical claims in *Wegmans*.  *See*

*infra* at 2.  Judge Stanton began his analysis by considering how a consumer would decide to buy

ice cream:

> The buyer's first desire is for ice cream, and when he is in the
> frozen food area he must select, from many choices (chocolate,
> lemon, mint, lime, etc.) the one he wants.  Thus the large-type
> "Vanilla" is of immediate use.  Of course he is not looking for a
> bowl of vanilla, and the next largest words confirm that the
> container holds ice cream.  Those who prefer natural ingredients
> will note that it has natural vanilla flavor, and no artificial flavors.
> Evidently there are various natural substances which have a vanilla
> flavor.  Those interested in the actual ingredients can read the list,
> which mentions neither vanilla beans nor extracts ….

2020 WL 3975461, at *2.  Judge Stanton then asked, "That is where the container's disclosures

start, and where they stop.  Where is the deception?  What is misleading, or misrepresented?"  *Id.*

 Judge Stanton continued:

> The plaintiffs assume that buyers take it for granted that natural
> vanilla flavor is wholly or largely derived from vanilla beans, and
> argue that if the predominant component of the flavoring is not
> from beans or vanilla extract, the customer is misled…. The
> Wegmans container does not mention vanilla beans, or bean
> extract, and even if vanilla or bean extract is not the predominant
> factor, if the sources of the flavor are natural, not artificial, it is

---

[6] https://order.baskinrobbins.com/menu-details/vanilla/generic?id=5d819e45-671e-4006-bd7b-bc75d84ceb72&sizes=%5B%7B%22size%22;%222.5%20oz%20scoop%22,%22id%22:%225d819e45-671e-4006-bd7b-bc75d84ceb72%22%7D,%7B%22size%22:%224%20oz%20scoop%22,%22id%22:%220b0c0fb9-f546-4d70-9b47-b81b6fa1938d%22%7D%5D

> hard to see where there is deception.  What is misrepresented?  The
> ice cream is vanilla flavored.  The sources of the flavor are natural,
> not artificial.

*Id.*  Judge Stanton concluded that the complaint did "not state a claim of misrepresentation

regarding the flavoring of Wegmans Vanilla Ice Cream and is dismissed." *Id.* *3.

Similarly, in *Mondelēz*, the Court found implausible plaintiffs' lawyer's theory that

consumers understand graham crackers to mean only crackers made entirely of graham flour:

> The word "graham" when included in the term "grahams" or the
> phrase "graham crackers" does not connote graham flour.  A
> reasonable consumer hearing the term "graham," even without the
> word "cracker," thinks first and foremost of a slightly sweet,
> darker-colored, rectangular, and perforated cracker.  It is a type of
> cracker that is used in desserts like s'mores.  The Court also does
> not believe a reasonable consumer would associate "graham" as
> meaning "graham flour," and as a result assume that graham flour
> is either the predominant ingredient in the product or that graham
> flour predominates over other types of flour.

2020 WL 4006197, at *9.

The logic and reasoning of these decisions is applicable here with even greater force.

Unlike the product in *Wegmans*, OWYN's product is labeled "smooth vanilla," which is not a

type of vanilla bean but plainly a flavor.  The product (a protein drink) is not one commonly

associated with any particular flavor or ingredient, as ice cream and graham crackers are.  A

curious consumer can easily read OWYN's ingredients, which do not mention vanilla beans or

extracts but rather "natural flavors."  The product is "smooth vanilla" flavored.  There is no

misrepresentation here.

Finally, the Court is also not required to ignore the facts and circumstances in this case in

assessing the plausibility of the claims.  *See Utts v. Bristol-Myers Squibb Co.*, 251 F. Supp. 3d

644, 673 (S.D.N.Y. 2017) (Cote, J.), *aff'd sub nom. Gibbons v. Bristol-Myers Squibb Co.*, 919

F.3d 699 (2d Cir. 2019) ("The motion to dismiss mechanism exists to prevent plaintiffs from

conducting fishing expeditions to see if they can cobble together meritorious claims.").  The

Complaint does not allege what caused Plaintiffs to buy the product (if, indeed, that occurred). The Complaint does not allege what Plaintiffs thought "vanilla" meant at the time they may have bought the product, only that they vaguely thought it had more vanilla than they now claim it does. And the Complaint is a cut-and-paste of 65 other cases all brought by individuals who, like Plaintiffs, were recruited rather than injured. Those facts all militate against any possibility that using the term "vanilla" to describe a vanilla drink would somehow be misleading to a reasonable consumer.

### B.    The Presence, *Vel Non*, of *V. Planifolia*, in a Vanilla Drink Is Not Material

Plaintiffs' claims separately and independently fail because they cannot allege materiality. They do not claim that they, or anyone else, were dissatisfied with the flavor of Smooth Vanilla. Nor could they. The product tastes great. In fact, it tastes exactly like a smooth vanilla protein drink – hence the name.

Smooth Vanilla tastes as expected because, as explained in the Complaint, vanillin is the "main flavor component" in vanilla flavor. (FAC ¶ 14.) Indeed, the FAC acknowledges that Smooth Vanilla has *more* vanillin than it would if it were flavored only with vanilla extract. (FAC ¶ 41.) Regardless of whether it is synthesized, naturally derived, or extracted from *V. planifolia*, the chemical compound vanillin is the same and tastes the same to the point that "professional taste panelists have not been able to determine a difference in flavor between real and artificial vanilla" in prepared foods. *The Bittersweet Story of Vanilla*, n.1, *supra*.

Further, Plaintiffs offer no plausible factual allegation that reasonable consumers care one way or another about whether, or how much *V. planifolia* is in their beverages – or whether consumers know or care about what *V. planifolia* even is. Such a conclusion is entirely counterfactual, since 99% of the vanilla products happily consumed by the public do not contain

*V. planifolia*.[7]   In *Widow Jane*, this Court found that the precise source of the limestone water used in post-distillation of the defendant's whiskey would not be material to a reasonable consumer.  2020 WL 3000358, at *3.  The Court noted that even if the label's reference to the source of water was arguably misleading, "it was not misleading 'in a material way,' as is required for liability under GBL §§ 349-50."  *Id.* (finding that "The Complaint contains no allegations that explain why a reasonable consumer would consider it material that the limestone water came from within the Widow Jane Mine boundaries rather than from another nearby source.")  Telling, Plaintiff Jones alleges that she continued to purchase Smooth Vanilla until "the middle of 2020," months after this lawsuit was filed, which is further proof that the presence of vanilla beans made no difference to her.  (FAC ¶ 71.)

     In the FAC, Plaintiffs attach a purported survey that they claim shows materiality.  This document is not evidence of anything.  All it shows is that a group of people who were precluded from reading the ingredients were asked whether they believed the "vanilla taste" of the Smooth Vanilla came from "vanilla beans" or other "non-vanilla sources."  The question is leading, the term "non-vanilla sources" is nonsensical, and the information presented to the participants renders the exercise pointless because an actual consumer would not be forced to guess at the ingredients.  The survey itself does not purport to have been designed by an expert or conducted

---

[7] Taste tests have confirmed that consumers prefer artificial vanilla or vanilla extract to vanilla beans in prepared foods.  Lopez-Alt, J. Kenji, *Taste Test:  Is Better Vanilla Extract Worth the Price*, SERIOUS EATS (Dec. 16, 2013), https://sweets.seriouseats.com/2013/12/taste-test-is-better-vanilla-extract-worth-the-price.html ("Real vanilla beans scored significantly lower in our ice cream taste test than either extract or artificial vanilla"); Griffin, Annaliese, *When to splurge on real vanilla, and when to use the imitation stuff – yes, it has a place*, QUARTZ (JUNE 29, 2018), https://qz.com/quartzy/1316944/imitation-vanilla-not-beans-is-the-best-choice-for-baking/#:~:text=Artificial%20vanilla%20flavor%20is%20made,They%20are%20identical.&text=They%20are%20chemically%20indistinguishable. (In a taste test involving snickerdoodles flavored with natural and artificial vanilla, "[t]he artificially flavored cookies won the tastes test two-to-one").

by one.  As such, it is meaningless.  *See THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218, 230-31 (S.D.N.Y. 2010) (to be valid evidence, survey must be conducted on representative sample, with proper methodology, avoid leading questions, accurately report the data collected, and be conducted by "recognized experts").

If Plaintiffs (or anyone) really cared about whether the drink contained *V. planifolia*, they could simply read the ingredients.  *See*, *e.g.*, *Widow Jane*, 2020 WL 3000358, at *3 (explaining that courts may consider labels as a whole, including "clarifying language").  Plaintiffs' rigged "survey" does not show otherwise.

### C.     Plaintiffs Did Not Suffer Any Injury as a Result of OWYN's Use of the Term "Vanilla" to Describe Its Vanilla Drink

Plaintiffs' claims separately fail because they do not allege that they suffered any injury as the result of any supposed misstatement by OWYN.  The complaint fails to identify what Plaintiffs understood "smooth vanilla" meant or how OWYN Smooth Vanilla differed from that expectation.  Without such allegations, Plaintiffs cannot plausibly allege a misrepresentation or materiality.  *E.g.*, *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) (dismissing claim because "Plaintiff has failed to allege either a plausible objective definition of the term 'All Natural' or her subjective definition of the term").

### D.     Plaintiffs' Citation to Technical FDA Regulations Is Irrelevant

The Complaint asserts that vanilla, unlike every other flavor, is uniquely regulated by the FDA and can only be used to describe a product's flavor when that product's vanilla flavor is exclusively derived from *V. planifolia*.  (FAC ¶¶ 13-27.)  But to the extent these regulations even apply, none of them is violated by OWYN's labeling.

To begin, the Complaint repeatedly cites to 21 C.F.R. § 101.22 for the proposition that any product labeled "vanilla" must contain *V. planifolia*.  (FAC ¶¶ 15, 19-20, 27.)  But the title

of this regulation refers to "spices, flavorings, colorings and chemical preservatives," and its substantive provisions chiefly concern products "shipped to a food manufacturer or processor (but not a consumer) …." 21 C.F.R. § 101.22(g) (parentheses in original). To the extent the regulation does relate to labels on consumer goods, it permits products to be labeled as having a particular "characterizing" flavor by stating the "common or usual name of the characterizing flavor." 21 C.F.R. § 101.22 (i). In fact, the regulation expressly contemplates the term "vanilla" as a permissible label when vanilla is the characterizing flavor, and cites using the term "vanilla" as a correct label for a vanilla-flavored product. *Id.* The only exceptions to this rule are for when the product (1) is commonly expected to contain a particular ingredient or (2) the product is artificially flavored. *Id.* Neither exception applies here, as Plaintiffs do not allege that Smooth Vanilla is artificially flavored (nor could they do so), and there is no common expectation that vanilla-flavored products have any specific ingredient.[8]

The Complaint alternatively cites to 21 C.F.R. §§ 169.175 and 169.177. The regulations only define the ingredients of vanilla tinctures, i.e., vanilla extract and vanilla flavoring – which are expected to come from plants. They have nothing to say about the labeling of vanilla flavored foods or protein drinks in particular. Nor would it make sense to apply these regulations, which regulate the composition of particular flavorings, to consumer goods. Innumerable goods combine vanilla with other flavors – root beer, vanilla buttercream frosting, or vanilla bean frappuccinos, to name but a few. Under Plaintiffs' misreading of the technical FDA regulations, the very composition of these goods, combining vanilla with other flavors, makes their sale misleading. That is not the law.

---

[8] In situations where vanilla-flavored products are flavored with vanilla and other natural flavors, the regulation permits products to state that they are flavored with vanilla and other natural flavors, just as OWYN's product is labeled. 21 C.F.R. § 101.22(i)(1)(iii).

E.       **The GC-MS Test Results Are Irrelevant**

The FAC also attaches the report of a purported GC-MS analysis of the Smooth Vanilla product.  (FAC Ex. B.)  This analysis purportedly shows that the Smooth Vanilla products contain the natural flavor ingredients vanillin, maltol, piperonal, nonanal, and cyclotene.  (FAC ¶¶ 30-42.)  The FAC alleges that this shows that Smooth Vanilla contains flavors from "non-vanilla sources."  (FAC ¶ 30.)  But for the reasons described above, this is irrelevant.  This test only confirms that the product undeniably tastes like vanilla due to the presence of vanillin.  OWYN is under no obligation to disclose every other flavor the product might have, just as an apple pie which is also flavored with cinnamon and nutmeg need not be labeled an "apple cinnamon nutmeg pie."  The GC-MS test results are thus meaningless.[9]

II.      **PLAINTIFFS' COMMON LAW CLAIMS SEPARATELY FAIL FOR ADDITIONAL REASONS**

Plaintiffs' common law claims, which piggyback on their primary statutory claim, all fail because Plaintiffs' core theory of deception fails as discussed above.  As this Court has explained:

> A claim for fraud under New York law requires proof of plaintiff's "justifiable reliance" on the defendant's misrepresentation. *Loreley Fin. (Jersey) No.3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 (2d Cir. 2015); *Ambac Assurance Co. v. Countrywide Home Loans, Inc.*, 106 N.E.3d 1176, 1182 (N.Y. 2018). A claim for

---

[9] The FAC also alleges that maltol, piperonal, and nonanal are artificial flavors.  FAC ¶¶ 34-38.  It is unclear why Plaintiffs care about this.  But in any event, it is incorrect.  All of these ingredients naturally occur in various plants.
https://pubchem.ncbi.nlm.nih.gov/compound/maltol;
https://pubchem.ncbi.nlm.nih.gov/compound/piperonal;
https://pubchem.ncbi.nlm.nih.gov/compound/Nonanal.  The FAC notes that the FDA allows artificial versions of these chemicals to be added to foods; but this only shows that the chemicals *can* be produced synthetically, not that they must be.  Some of these chemicals are produced by virtually every living thing, such as nonanal, which is now believed to be the compound responsible for us getting bit by mosquitoes.  https://www.ucdavis.edu/news/uc-davis-researchers-identify-dominant-chemical-attracts-mosquitoes-humans.

> unjust enrichment requires proof "that it is against equity and good
> conscience to permit defendant to retain what is sought to be
> recovered." *Kaplan v. Reed Smith LLP*, 919 F.3d 154, 160 (2d Cir.
> 2019) (citation omitted). For the reasons described above, plaintiff
> has not plausibly pleaded that Widow Jane's labeling was
> materially misleading. Accordingly, plaintiff has not adequately
> pleaded justifiable reliance or that it would be inequitable to allow
> defendant to retain its profits.

*Widow Jane*, 2020 WL 300358, at *4.

These ancillary claims are also individually flawed: their breach of warranty claims fail because they do not allege the existence of any warranty on which they relied or that they provided notice, as required; and their unjust enrichment claim is entirely duplicative. All of Plaintiffs' claims should be dismissed.

### A.    Plaintiffs' Warranty Claims Fail on Many Grounds

Plaintiffs allege a breach of three warranty claims: an express warranty, implied warranty of merchantability, and violation of the Magnuson-Moss Warranty Act ("MMWA"). Plaintiffs' warranty claims all fail because Plaintiffs never provided the requisite notice of the alleged breach of warranty and Plaintiffs are not in privity with OWYN, no statement on the label creates an express warranty, Plaintiffs fail to allege that OWYN's product is not merchantable, and the MMWA is inapplicable here.

### 1.    Plaintiffs Have Not Alleged Timely Notice of Warranty Claims or Privity with OWYN

As a threshold matter, Plaintiffs failed to allege adequate notice of their warranty claims as required under New York law. *Singleton v. Fifth Generation, Inc.*, 2016 WL 406295, at *12 (citing N.Y. U.C.C. Law § 2–607(3)(a)) ("Under New York law, a buyer must provide the seller with timely notice of an alleged breach of warranty."). Here, the complaint merely alleges that Plaintiffs "provided or will provide notice to defendant." (FAC ¶ 105.) Given Plaintiffs' apparent confusion about whether they even provided notice, they fail to allege any details of the

alleged notice including when they discovered the alleged breach of warranty or when OWYN was allegedly provided such notice (if at all).  This is insufficient and the breach of warranty claims must fail.  *See Singleton*, 2016 WL 406295, at *12; *see also Tomasino v. Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251, 262 (E.D.N.Y. 2014).

Plaintiffs also fail to sufficiently allege privity, which is required to state a claim for breach of implied warranty.  *Arthur Jaffe Assocs. v. Bilsco Auto Serv. Inc.*, 58 N.Y. 2d 993, 995 (1983); *Castillo v. Tyson*, 268 A.D. 2d 336, 336 (N.Y. App. Div. 1st Dept. 2000) ("there can be no breach of warranty claim absent privity of contract between plaintiffs and defendants").  Here, Plaintiffs make no allegation that they purchased the drink from OWYN, and, in fact, the complaint makes no allegations whatsoever about when or where "within this district and/or State" Plaintiffs allegedly purchased the product.  (FAC ¶ 68.)

### 2.     Plaintiffs Have Not Alleged Any Statement on OWYN's Label that Creates an Express Warranty

Under New York law, an express warranty must be premised on an "affirmation of fact" or express "promise" upon which the buyer relies.  *In re Scotts EZ Seed Litig.*, No. 12 CV 4727(VB), 2013 WL 2303727, at *6 (S.D.N.Y. May 22, 2013) (citing N.Y. U.C.C. Law § 2-313(a)); *Teixera v. St. Judge S.C., Inc.*, 193 F. Supp. 3d 218, 224 (W.D.N.Y. 2016).

Here, Plaintiffs do not identify any affirmation of fact or express promise on OWYN's label.  A plaintiff cannot plead a warranty claim by contorting a label's statements into a fact or promise that the defendants did not state or provide.  *See Baker v. Robert I. Lappin Charitable Found.*, 415 F. Supp. 2d 473, 489–90 (S.D.N.Y. 2006) (taking statements out of context could not turn them into an express warranty).  Similarly, Plaintiffs have not identified any warranty on which they relied about the source of vanilla flavoring in OWYN's product.

### 3.   Plaintiffs Have Not Alleged that OWYN's Product is not "Merchantable"

Plaintiffs' claim for breach of implied warranty of merchantability must also be dismissed because Plaintiffs do not and cannot allege that OWYN's product is not of merchantable quality.  A breach of the implied warranty of merchantability occurs only when a product is not "fit for the ordinary purposes for which such goods are used." *Scientific Components Corp. v. Sirenza Microdevices, Inc.*, 399 F. App'x 637, 640 (2d Cir. 2010) (quoting N.Y. U.C.C. § 2-314(2)(c)).  Food and beverage products need only be "fit[] for human use or consumption" to be of "merchantable quality."  *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *25 (E.D.N.Y. July 21, 2010) (dismissing New York breach of implied warranty of merchantability claim for failure to establish beverage product did not meet "a minimum level of quality").  Here, Plaintiffs make no attempt to allege that OWYN's product was not fit for human consumption, contaminated in some way, or otherwise inedible. Thus, their breach of implied warranty claim must fail.

### 4.   Plaintiffs Have Not Alleged Any "Written Affirmations" or "Promises"

Finally, Plaintiffs' MMWA claim also should be dismissed.  Plaintiffs' allegations do not identify any statement constituting a warranty.  The identification of "Smooth Vanilla" as the flavor of the drink does not constitute a MMWA warranty.  The MMWA defines a written warranty as a "written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A). No such "written affirmation" or "promise" exists.  Because Plaintiffs do not identify statements on the label that warranty a product free from defect, nor does it constitute a promise the product

21

will meet a specified level of performance, Plaintiffs' MMWA claim fails.  *See In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at \*17 (E.D.N.Y. Aug. 29, 2013) (dismissing MMWA claims based only on the label "All Natural").

**B.     Plaintiffs' Unjust Enrichment Claim Should be Dismissed as Duplicative**

Plaintiffs' claim for unjust enrichment fails because it is wholly duplicative of their other claims.  Under New York law, an unjust enrichment claim is available "only in unusual situations."  *Paulino v. Conopco, Inc.*, No. 14-CV-5145 JG RML, 2015 WL 4895234, at \*3 (E.D.N.Y. Aug. 17, 2015) (citation omitted)).  "It is not a 'catchall cause of action to be used when others fail.'"  *Id.* (citation omitted).  That is precisely what Plaintiffs attempt to do here.  In a single throw away sentence, Plaintiffs allege only that "Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiffs and class members, who seek restitution and disgorgement of inequitably obtained profits."  (FAC ¶ 114.)  Where, as here, an unjust enrichment claim is based on the same allegations as other claims, the claim should be dismissed as duplicative.  *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) (quoting *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790-91 (2012)) ("An unjust enrichment claim cannot survive 'where it simply duplicates, or replaces, a conventional contract or tort claim.'"); *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB), 2016 WL 5372794, at \*18 (E.D.N.Y. Sept. 26, 2016) (dismissing claim as duplicative where unjust enrichment claims are "based on the same allegations as her claims of violations of GBL sections 349 and 350").

## <u>CONCLUSION</u>

For the foregoing reasons, OWYN respectfully submits that the complaint should be dismissed with prejudice.

Dated: July 27, 2020

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP


By:  */s/ Jonathan Kortmansky*
Jonathan Kortmansky

BRAUNHAGEY & BORDEN LLP
7 Times Square, 27th Floor
New York, NY 10036
Tel. & Fax: (646) 829-9403

Attorneys for Defendant
Only What You Need, Inc.