USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/27/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                              :
TANIA PICHARDO, JENNIFER JONES,                               :
*individually and on behalf of all others similarly           :
situated*,                                                    :
                                                              :        20-CV-493 (VEC)
                                            Plaintiffs,       :
                                                              :        MEMORANDUM
                        -against-                             :        OPINION AND ORDER
                                                              :
ONLY WHAT YOU NEED, INC.,                                     :
                                                              :
                                            Defendant.        :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Plaintiffs Tania Pichardo and Jennifer Jones bring this putative class action against Only What You Need, Inc. (OWYN). Plaintiffs allege that the labeling on Defendant's vanilla-flavored protein drink violates New York General Business Law §§ 349-50 (GBL §§349-50) because the vanilla flavor is not derived exclusively from the vanilla plant.[1] Defendant moved to dismiss the First Amended Complaint (FAC) under Rule 12(b)(6), arguing that Plaintiffs have not adequately pled material misrepresentation or injury. For the following reasons, OWYN's motion to dismiss is GRANTED.

## BACKGROUND

Defendant manufactures, distributes, markets, labels, and sells a non-dairy, vanilla-flavored protein beverage. FAC (Dkt. 22) ¶ 1. The label on Defendant's product has a vanilla flower vignette and the words "Smooth Vanilla." *Id.* ¶ 3.

---

[1] The FAC also alleges claims for breach of warranty and common law torts. Plaintiffs abandoned those claims in their response to the motion to dismiss. Pl. Reply (Dkt. 31) at 3, 15.

Plaintiff Pichardo purchased Defendant's beverage in the winter of 2018, and Plaintiff Jones purchased it on "numerous occasions between January 2018 and the middle of 2020." *Id.* ¶¶ 70–71. Both allege that they purchased the product because they believed the vanilla taste came exclusively from the vanilla plant. *Id.* ¶ 68. They further allege that the absence of qualifying terms like "flavored" or "naturally flavored" on the label led them to believe that the drink had more vanilla from vanilla beans than it actually did. *Id.* ¶ 72.

Plaintiffs rely on a consumer survey they commissioned to support their contentions. They claim that the survey demonstrates that, based on what appears on the product label, over 70% of respondents believed the flavor in Defendant's product came "only from vanilla beans." *Id.* ¶ 22. According to Plaintiffs, the survey also found that almost 50% of the respondents would be less likely to purchase the product if the vanilla flavor were not exclusively from the vanilla plant. FAC, Ex. A, at 8; Pl. Reply (Dkt. 31) at 11. Plaintiffs concede that the product contains some vanilla from the vanilla plant, FAC ¶ 24, but point to the results of a Gas Chromatography-Mass Spectrometry (GC-MS)[2] test performed on the product, which demonstrates that "the product contains added vanillin from a natural source material other than vanilla,"[3] to allege that the vanilla taste does not derive exclusively from the vanilla plant. *Id*. ¶ 42.

Plaintiffs filed this action against OWYN, alleging violation of New York General Business Law §§ 349-50, which prohibits deceptive acts, practices, and false advertising. *See* N.Y. Gen. Bus. Law §§ 349-50. They claim the labeling on Defendant's product is materially misleading because the product's vanilla flavor does not come 100% from vanilla extract but

---

[2]   "GC-MS is a commonly used methodology to identify small and volatile flavor compounds." FAC ¶ 31.

[3]   Vanillin is the main flavor component of vanilla. FAC ¶ 17.

instead has additional flavoring ingredients.  FAC ¶ 4.  Plaintiffs further allege that they relied on these misrepresentations when purchasing the product, and they would not have purchased the product or paid as much for it had they known the flavor did not come 100% from the vanilla plant.  *Id.* ¶¶ 89–90.

OWYN moved to dismiss the First Amended Complaint, arguing that Plaintiffs have not adequately pled misrepresentation, materiality, or injury.  Def. Mem. (Dkt. 26) at 9.

## DISCUSSION

### I.  STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief."  *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, (2007)).  "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level."  *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).  The Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff.  *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).  The Court is not required, however, "to accept as true a legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

### II.  NEW YORK GENERAL BUSINESS LAW SECTIONS 349 AND 350

Section 349 of the New York General Business Law prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 349(a).  Section 350 of the New York General Business Law prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 350.  In order to state a claim

under either Section 349 or 350, a plaintiff must allege that "(1) the defendant's act, practice or advertisement was consumer-oriented;[4] (2) it was materially deceptive and misleading; and (3) that [the moving party] was injured as a result." *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 405 (E.D.N.Y. 2004) (citing cases); *see also New World Solutions, Inc. v. NameMedia Inc.*, No. 11-CV-2763, 2015 WL 8958390, at *25 (S.D.N.Y. Dec. 15, 2015) ("The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349.") (quotation and citations omitted).

When analyzing whether a label is deceptive, courts do not view the label in isolation. Instead, "[c]ourts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Wurtzburger v. Kentucky Fried Chicken*, No. 16-CV-08186, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017) (quotations omitted); *see also Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("In determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."). Moreover, the test is an objective one – would a reasonable consumer be misled. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 27 (1995).

Although consumer deception is a matter of fact often left for the jury, "[it] is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741.

**A. Overview of Vanilla**

Vanilla is one of the most common ingredients in food, whether as a primary flavor or a component of another flavor. FAC ¶ 6. The source of the vanilla flavor is an orchid, *V. planifolia*. *Id.* ¶ 5. "Vanilla extract" refers to vanilla from vanilla beans, the vanilla flower, or

---

[4] OWYN does not contest that the labeling of its product is consumer-oriented.

4

the vanilla plant. The main flavor component of vanilla is vanillin. *Id.* ¶ 17. Vanillin comes from vanilla and from other natural sources. *Id.* ¶ 42. In this opinion, "vanilla extract" is used to refer to vanilla derived from *V. planifolia*. As acknowledged in the original complaint, virtually all commercial references to vanilla are to vanillin; very few commercial products have vanilla taste that derives entirely from vanilla extract. Compl. (Dkt. 1) ¶ 17.[5]

**B.    Plaintiffs Have Not Adequately Pled A "Material Misrepresentation"**

### 1. A Reasonable Consumer Would Not Be Misled by Defendant's Label

Plaintiffs have not alleged facts from which the Court can infer that the label in question is materially misleading. The drink, labeled "Smooth Vanilla," is a vanilla-flavored drink that tastes like vanilla and is flavored, in part, with vanilla extract.[6] In large measure, this case is indistinguishable from a case involving vanilla ice cream recently decided by Judge Stanton. In *Steele v. Wegmans Food Markets, Inc.*, the plaintiffs argued that the label on Wegmans' vanilla

---

[5]    Plaintiffs did not include this fact, that almost all vanilla products "have no connection" to vanilla extract, in their First Amended Complaint. When allegations in the original complaint are inconsistent with allegations made in the amended complaint, courts are authorized to "accept the facts described in the original complaint as true." *Wallace v. New York City Dept. of Corr.*, No. 95-CV-4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996). *See also Dozier v. Deutsche Bank Trust Co. Americas*, No. 09-CV-9865, 2011 WL 4058100, at *2 (S.D.N.Y. Sept. 1, 2011) ("[T]he court need not accept as true allegations that conflict with a plaintiff's prior allegations."). Because the fact that the vast majority of commercial products that are labeled "vanilla" do not derive that taste exclusively from vanilla extract is inconsistent with the entire gist of the FAC, the Court will consider that allegation from the initial Complaint in deciding this motion.

[6]    Plaintiffs also suggest that the labeling of Defendant's product violates FDA regulations. FAC ¶¶ 19–20. But Plaintiffs' claims regarding FDA regulations are not relevant to determining whether a label is deceptive or misleading under GBL §§ 349-50. "There is no private right of action for breaches of [FDA] provisions," and violations of federal standards do not automatically translate into an actionable claim under GBL §§ 349-50. *Steele v. Wegmans Food Markets, Inc.*, No. 19-CV-9277, 2020 WL 3975461, at *1–2 (S.D.N.Y. July 14, 2020) ("The point here is not conformity with this or that standard (which is left to the authorities to regulate) but whether the marketing presentation was deceptive."). *See also North Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 519 (S.D.N.Y. 2013) (finding that plaintiffs failed to show a likelihood of success on the merits of their GBL §§ 349-50 claim even though defendant's label violated FDA standards); *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 192 (E.D.N.Y. 2018) (finding that New York courts must evaluate a material misrepresentation claim under GBL § 349 irrespective of whether defendant's practices violate the Federal Food, Drug, and Cosmetics Act).

Plaintiffs acknowledge that the FDA regulations do not create a cause of action, but they argue that the regulations "provide context" to support their allegations of deception and unlawfulness. Pl. Reply at 14. While they may provide context, the label is, nevertheless, not misleading.

ice cream was misleading because it stated that the product was "made with . . . natural vanilla flavor," when the ice cream contained only a tiny amount of vanilla extract. No. 19-CV-9277, 2020 WL 3975461, at *1 (S.D.N.Y. July 14, 2020). Judge Stanton found:

> The Wegmans container does not mention vanilla beans, or bean extract, and even if vanilla or bean extract is not the predominant factor, if the sources of the flavor are natural, not artificial, it is hard to see where there is deception. What is misrepresented? The ice cream is vanilla flavored. The sources of the flavor are natural, not artificial.

*Id.* at *3. Similarly, the label on Defendant's protein drink does not state that it is "made with vanilla extract" or even contain the words "vanilla extract." There is no basis, therefore, to conclude that a reasonable consumer would be misled by the label to believe that all (or even most) of the vanilla taste comes from vanilla extract.

Although the vast majority of vanillin used commercially is not from vanilla extract, Compl. ¶ 17, Plaintiffs nevertheless argue that they have plausibly asserted that the label on the product is misleading based on the results of a consumer survey that Plaintiffs' counsel conducted. Although survey evidence can be persuasive in cases of alleged consumer deception, *see Danone, US, LLC v. Chobani, LLC*, 362 F. Supp. 3d 109, 120 (S.D.N.Y. 2019) (finding that a consumer survey was persuasive extrinsic evidence to demonstrate that customers are misled by "Chobani's 33% less sugar" label), even construing Plaintiffs' survey in the light most favorable to Plaintiffs, the survey does not plausibly support Plaintiffs' claim. Plaintiffs contend that the consumer survey demonstrates that over 70% of the respondents believed the flavor in Defendant's product came "only from vanilla beans." FAC ¶ 22. The language used in the survey itself, however, shows that over 70% of the respondents believed the vanilla taste came from vanilla plants; 70% did not say that they believed the vanilla taste came *only* from vanilla

6

plants.[7]  FAC, Ex. A, at 7.  More significant, however, over 95% of the consumers expected the Product to have a vanilla taste.  *Id.* at 6.  In fact, the product has a vanilla taste and contains some vanilla from vanilla extract.

The cases on which Plaintiffs rely to support their claim that the label is misleading are inapposite.  In *Mantikas v. Kellogg Co.*, the Second Circuit reversed a grant of a motion to dismiss.  910 F.3d 633 (2d Cir. 2018).  The Second Circuit found that labeling Cheez-Its crackers as "whole grain" could be misleading because it falsely implies that the predominant ingredient is whole grain flour, not white flour.  *Id.* at 637.  But those facts are not analogous largely because vanilla describes both a taste and an ingredient.  There is a clear difference between whole grain flour and white flour – whole grain flour has more fiber and more nutrients than white flour.  In fact, capitalizing on that difference, Kellogg created a separate Cheez-Its product made with whole grain as a healthier alternative to Cheez-Its Original, which are made with white flour.  Other food products also clearly designate whether they are made with whole grain flour, specifically because the presence of whole grain flour (as opposed to white flour) is significant from a health perspective.  But vanilla products are not similar.  A vanilla product that exclusively uses vanilla extract for vanilla flavor is not healthier — or materially different in any other way — than a vanilla product that uses vanillin from some other natural source.  Unlike whole grain and white flour products, vanilla products are not even divided into those that are

---

[7]  In order for Plaintiffs to make this allegation about the survey results, they improperly conflate two responses.  In the survey, the respondent was shown a picture of the bottle in which the product is sold and asked, "What does the label . . . convey about the origin of the vanilla taste?"  FAC, Ex. A, at 7.  The respondent had five choices, two of which were: "That it comes from vanilla beans from the vanilla plant" and "That it comes from both the vanilla plant and non-vanilla sources."  *Id.*  Based on the latter potential response, Plaintiffs implicitly assert that the respondents who selected "It comes from vanilla beans from the vanilla plant" actually meant to convey that they believe the vanilla flavor comes 100% from the vanilla plant.  That is not, however, the most plausible reading of the survey response.  Plaintiffs constructed the survey.  If they wanted to ascertain whether respondents thought the flavor came 100% from the vanilla plant, that would have been an easy enough response to draft.

7

flavored exclusively with vanilla extract and those that are not. Implying that whole grain flour is the dominant ingredient when, in fact, the dominant ingredient is white flour can be misleading because, given the labeling, reasonable consumers would expect a different, healthier product. In contrast, stating that a protein drink is vanilla flavored when it is, even without clarifying the source of the vanilla, does not mislead because reasonable consumers would expect a vanilla taste, and that is exactly what they get.

Plaintiffs also rely on *Izquierdo v. Panera Bread Co.* 450 F. Supp. 3d 453 (S.D.N.Y. 2020). In *Izquierdo*, the plaintiff complained that Panera's "blueberry bagels" contain "primarily imitation blueberries with a lesser quantity of real blueberries." *Id*. at 462. The district court found that the plaintiff had plausibly alleged that a reasonable consumer would be misled into believing the bagel would contain real blueberries "in light of the . . . normal expectations of blueberry baked goods." *Id*. Although "blueberry," like vanilla, can be a flavor as well as an ingredient, consumers can see the blue pieces of "blueberries" in their bagels. *Id*. In contrast, vanilla is not a separate component that is visible as a distinct ingredient, and unlike what a reasonable consumer would anticipate relative to baked goods containing blueberries, given Plaintiffs' acknowledgement that the vast majority of vanilla flavored commercial products do not derive their flavor entirely from vanilla extract, it is not plausible to allege that a reasonable consumer would understand that the vanilla flavoring in a beverage is derived entirely from vanilla extract. In short, *Izquierdo* is not analogous.

*Sharpe v. A&W Concentrate*, on which Plaintiffs rely, is also inapposite. No. 19-CV-768, 2020 WL 4931045 (E.D.N.Y. Aug. 24, 2020). At issue in *Sharpe* were labels on root beer and cream soda that stated the beverages were "made with aged vanilla," even though the vanilla flavor came predominantly (if not entirely) from an artificial ingredient. The court found the plaintiff had plausibly alleged the label was misleading because of the qualifying word "aged,"

8

which communicates to the consumer that the vanilla flavoring comes from vanilla beans. *Id*. at *5. In contrast, the label on OWYN's protein drink does not state that it is "made with aged vanilla" or "made with" anything else that would imply the vanilla flavor comes exclusively from vanilla extract.

The label "Smooth Vanilla" is not misleading because, absent additional facts like those present in *Sharpe*, reasonable consumers associate the word "vanilla" with a flavor, not with an ingredient. *See Steele*, 2020 WL 3975461 at *2 ("The buyer's first desire is for ice cream, and when he is in the frozen food area he must select, from many choices (chocolate, lemon, mint, lime, etc.), the one he wants. Thus the large-type "Vanilla" is of immediate use. Of course he is not looking for a bowl of vanilla . . . "). When consumers read vanilla on a product label, they understand it to mean the product has a certain taste. It is difficult to comprehend what is misleading when the Defendant's "Smooth Vanilla" tastes like vanilla. Had Defendant's label contained other qualifying words, such as "made with," "contains," or "vanilla beans," a reasonable consumer might be led to believe that vanilla from vanilla extract is the exclusive or primary flavor ingredient, but that is not the case here.

Nor does the use of the term vanilla imply that there are no other flavoring ingredients. *See Sarr v. BEF Foods, Inc.*, No. 18-CV-6409, 2020 WL 729883, at *4 (E.D.N.Y. Feb. 14, 2020) (finding that the label "Real . . . Butter" is not likely to mislead because the product contained real butter and a reasonable consumer would not interpret "real butter" as implying there were no additional fats); *Kennedy v. Mondelez Global LLC*, No. 19-CV-302, 2020 WL 4006197, at *13 (E.D.N.Y. 2020) (holding that "made with real honey" is not misleading even though honey was not the exclusive sweetener because the product did contain honey). As in *Sarr* and *Kennedy*, because OWYN's protein drink does contain vanilla extract, Plaintiffs have not and cannot

plausibly allege that it is misleading for the label to state "Smooth Vanilla," regardless of whether vanilla extract is the exclusive flavoring ingredient.

In short, a reasonable consumer would not be misled by OWYN's label to believe the vanilla flavor is exclusively sourced from vanilla extract.

### 2. Amount of Vanilla Extract is Not Material

Even if Plaintiffs had adequately alleged that a reasonable consumer would be misled by the OWYN label to believe the vanilla flavor is exclusively sourced from vanilla extract, Plaintiffs have not adequately pled facts from which the Court can plausibly infer that a reasonable consumer would find the amount of vanilla flavor that comes from vanilla extract (as opposed to other sources of vanillin) is material.[8]

In *Boshnack v. Widow Jane Distilleries LLC,* the label at issue stated that the source of Widow Jane's mineral water was the Widow Jane Mine, when in fact it was not. No. 19-CV-8812, 2020 WL 3000358, at *3 (S.D.N.Y. June 4, 2020). The court held that the precise source of the water was immaterial because a reasonable consumer would not rely on this fact when deciding whether to purchase the product. *Id.* Here too, Plaintiffs have not explained why the amount of vanilla taste coming from vanilla extract is material. Plaintiffs allege in a conclusory way that they would not have purchased the product or paid as much if they had known the "true facts," but they do not explain why.

Plaintiffs supplement their conclusory allegation with their survey results that "show that almost 50% of the consumer survey respondents would be less likely to purchase the product if the vanilla flavor did not come [exclusively] from a vanilla plant." FAC, Ex. A, at 8; Pl. Reply

---

[8]   Plaintiffs do not allege how much vanilla extract is in Defendant's product. FAC ¶ 41 ("[T]he level of vanillin detected in the Product . . . exceed the levels which would be found if vanilla extract were the only source of vanillin.").

at 11. The problem with that argument is that it runs headlong into Plaintiffs' acknowledgement in the original complaint that approximately 98% of commercial vanillin does not come from vanilla extract. Compl. ¶ 17. Because the Court can take judicial notice that the grocery store shelves are stocked with many vanilla-flavored beverages that sell just fine, the Court cannot accept the conclusory allegation contained in the FAC as a well-pled allegation that consumers view the percentage of vanilla taste that derives from vanilla extract to be a material fact that influences consumers' buying habits.

For these reasons, the FAC has not plausibly alleged that reasonable consumers consider the percentage of vanilla taste in a vanilla product that derives from vanilla extract to be material.

### C. Plaintiffs Have Adequately Pled Injury

Plaintiffs have alleged that they would not have purchased the product or been willing to pay as much had they known the true facts, namely that the vanilla taste did not derive 100% from vanilla extract. FAC ¶ 90. This is sufficient to meet their burden of alleging injury as a result of alleged misrepresentation. *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 642 (S.D.N.Y. 2020); *see also Orlander v. Staples, Inc.*, 802 F.3d 289, 302 ("Plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.").

## CONCLUSION

For the reasons discussed above, OWYN's motion to dismiss is GRANTED and the case is DISMISSED. Given the FAC's fundamental flaws and the fact that Plaintiffs have already amended their complaint once, the Court finds that leave to amend would be futile in this case. Accordingly, the FAC is DISMISSED WITH PREJUDICE. The Clerk of the Court is respectfully requested to close all open motions and enter judgment in favor of Defendant.

**SO ORDERED.**

Date: **October 27, 2020**
      **New York, New York**

                        **VALERIE CAPRONI**
                        **United States District Judge**